First case this morning is case number 4-170-779. It is People v. Ryburn for the appellant we have Gilbert Lentz and we have Lee Allison Brooks. Mr. Lentz will proceed with you. Good morning, Your Honor. My name is Gilbert Lentz and I will proceed with you on behalf of Thomas Ryburn. Your Honor, Mr. Ryburn's second case proceedings may feel substantial showing of the favor of the prejudice necessary for him to seek relief from the success of the post-conviction situation. Mr. Lentz, you may begin. The state does not dispute, for the most part, not dispute at all, the individualities of individual proceedings in this case. The state does not dispute the substantial showing of either promise strictly, specifically that counsel performed efficiently in which he failed to delay the December 1998 plea offer. The state does not dispute the criminal prejudice that there is a reasonable probability that the result would have been different had that plea offer been delayed. And nor does the state dispute that the plea makes a substantial showing of promise to be allowed to file this claim in a successful position. In short, Your Honor, the fraud violation occurred in this case, and Mr. Ryburn had raised that claim at his first opportunity. This is exactly the kind of petition that should go to a third state hearing, and it's very similar to the petition this Court advanced to a third state hearing in the Williams case. The state does not dispute the individualized proceedings, but does assert, instead, that the individualized proceedings are not sufficient. The state asserts that Subsection F of the Post-Perdiction Hearing Act contains a categorical bar to anyone who has derived an infeasibility from filing a successful post-perdiction hearing. The state's argument rests entirely on a single word in Subsection F of that statute, the word trial. And the state asserts that this word alone acts as a complete bar to those who have infeasibility from the individualized post-perdiction hearing. This Court should reject this unprecedented and hyper-technical reading of the Post-Perdiction Hearing Act, and it should do so because the Illinois Supreme Court has consistently, both before and after the codification of the top of the agency statute, applied Subsection F to successive petitions following the guilty plea. It did so in Guerrero in 2012, and suddenly, in that case, it actually described the original proceeding that resulted in the guilty plea as a, quote, trial, but still applied the cousin's prejudice test. It did so in Hollins years before, which is one of the common cases of the cousin's prejudice test, following a guilty plea, applied it to successive petitions. And maybe most importantly, in both Tremaine Jones and Schultzman, the Illinois Supreme Court, after the codification of the test, specifically said that the defendant may file successive petitions after a guilty plea, and with the caveat that if he does so, it's subject to the cousin's prejudice test, which we are asking this Court to apply. What case said that? That was Tremaine Jones and Schultzman. Tremaine Jones, they said it was possible for a defendant to file successive petitions, and Schultzman, they specifically said that such a petition would be subject to the cousin's prejudice test when he received the codification. So, Your Honor, not to mention all the appellate court cases that have done the same thing. So, Your Honor, all of this authority shows that when the legislature used the word trial, it was merely an attempt to be true to the language of Bismarck, which used the word trial. But as Bismarck himself said, the use of that word was specific to the context of that case, which didn't go to trial. So if we accept the State's argument, we would be ruling, making a decision contrary to Supreme Court decisions in Jones, Guerrero, and Shellstrom. Is that correct? Well, it would be contrary to the spirit of those decisions. I mean, the Supreme Court has never been presented with the State's argument today, but the Supreme Court specifically has said in those cases, or through its practice of applying the test, has shown that a successive post-addiction decision, even from a guilty plea, is subject to the cousin's prejudice test. So, yes, contrary to that, yes, Your Honor. And this is a similar analogy to a similar argument that the State has made regarding the standing of post-addiction proceedings, where the State, in several prior cases, argued that only a defendant was physically in prison in a correctional center should file a decision. But, you know, the Supreme Court has consistently expanded, or read that term expansively, including those on parole, MSR, and a few other lines. So, Your Honors, finally, this case is actually a good example of the injustice that would result from an outdated State's argument, because here we have a – where the record, at minimum, makes a substantial showing that a prior violation, a very serious confrontative violation, occurred in this case. At minimum, it makes a substantial showing of cause in that the primary did not know about this claim before 2014. And, in that sense, this case is similar to this court's decision in the case in Austin, where the court made clear that the defendants also had filed multiple prior decisions that the subsection F, using safety nets, actually says that it's intended to catch cases, and some of the few cases, that slip through the cracks. And Mr. Reimer is exactly one of those cases. So, we are really going to be in Austin, both for this case and the rest of this court. This court should be able to comment through the safety net that you're hearing. Okay, thank you. You'll have rebuttal if you desire. Ms. Brooks. Good morning, Your Honors, and thank you for your support. My name is Allison Page Brooks, and I'm here on behalf of the people. And the state's argument does not have any precedent that has cited this part of the statute in accordance with the state's argument, but the state does rely on the plain meaning, the plain language of the statute. And, also, the state has relied on the People vs. Breed case, which was decided recently by this court, which refused to permit the defendant who alleges actual innocence, who, after having pleaded guilty, to pursue an actual innocence suit in a successful post-conviction petition. So, the decision for this court in the state's favor would merely bring the law in alignment in terms of the ability of a person who pleaded guilty to pursue a successful post-conviction petition, because it would be anomalous for a defendant who pleaded guilty, who, in fact, is guilty, who merely complains that they were deprived of a better deal to pursue a successive post-conviction petition, but a defendant who claims actual innocence, for example, is barred from doing so by their guilty plea. And so, it would be anomalous to allow the defendant to proceed in this context when they could not do so, so that they could proceed with a compelling claim of actual innocence. And the cases that the defense relies on, especially the Gutierrez case from the 1st District, it engages in sort of like a sleight-of-hand substitution of the word actually used in the statute. And Gutierrez said, both Pittsburgh and the statute, to say that the error is so infectious to be proceeding. Well, the prescription to accountants for rewriting of statutes in this manner, when the word proceedings is actually specifically used earlier in section 122-1, and then the word trial appears in subsection F, which means that when the legislature uses one word, proceedings, earlier in the statute, but decides to use a different word, trial, in a later different part of the same statute, 122-1, then the courts will then decide that the legislature must have meant something different by the conscious choice of the word trial, rather than the word proceedings. Because the legislature knew how to use the word proceedings, because it just did. It was in 122-1, in a different part of the same statute. And so, that is one important rule of statutory construction that would be violated if this court decides to treat the word trial as if it said something else, entirely different. And courts may not rewrite statutes except to conform what can be discerned as an obvious legislative intent. Because if the spirit and intent of the general assembly in adopting a law is clearly expressed, and the objects and purposes are clearly set forth, then in that situation, a court would not be bound by the literal language of a particular cause if it would defeat the obvious intent of the legislature. So, in order to rewrite the statute here, there has to be an obvious intent of the legislature that would be defeated by construing it in the literal manner. And State is saying here that the literal construction here is actually in accordance with the intent of the legislature. Successive post-conviction petitions are disfavored. So, therefore, the cause of prejudice test should be narrowly construed. And so, this is a different situation than the Martin Trigoda case, where they talked about what does it mean to be, quote, imprisoned in the penitentiary, which is a different part of the statute, which applies to initial petitions. And Martin Trigoda cited the fact that that part of the post-conviction hearing act was liberally construed. So, it was applying an opposite rule, the liberal construction, to determine what it means to be imprisoned in the penitentiary. And in that context meant essentially being deprived of liberty. So, if you're on appeal bonds, you're still imprisoned in the penitentiary for the purposes of that statute, liberally construed. However, if the cause of prejudice test is narrowly construed because successive post-conviction petitions are disfavored under the law, and recognizing that the post-conviction hearing act is an extension of the State's legislative grace. And so, the context of a successive post-conviction petition is like a lot of legislative grace. So, even to let a sort of a successive petition in. And so, the legislature has an obvious interest in preserving the finality of criminal convictions. And in doing so, provides a very strict way of limiting the ability of a defendant, like this defendant who pleaded guilty in a case that was filed in 1998, involving a victim of sexual assault. Someone who has never testified at a trial because the defendant pleaded guilty. So, there's never been any prior opportunity for confrontation. And if the defendant gets post-conviction relief, then the possibility of the State will be forced into the burden of giving him a trial for the first time, over perhaps 20 years after he pleaded guilty, without any prior opportunity for conviction, or a new witness who may no longer be available if it cannot be determined from the record. But in other situations, a defendant who pleads guilty and then insists on a trial 20 years later, the victim could be deceased, or otherwise unavailable, or unable to be found to testify at a trial. In which case, the defendant could have, essentially, a get-out-of-jail-free card. Even though they pleaded guilty, and even though their only complaint is that they were deprived of an opportunity of getting a better deal in pleading guilty. In other words, they are guilty, but they just thought that they should get a better deal. And so, a person like that who has the convictions vacated and remanded for new proceedings, could then insist on a trial, and the legislature should anticipate this sort of problem, in the prosecutors being forced to try these sort of cases for the first time. And so, it is rational for the legislature to be concerned about the ability of a person in a successive post-conviction petition to undo a plea of guilty. And that those particular problems, I think it was decided by this court in Reed, about how, as a result of the plea, the state's evidence might have grown stale. So, the drugs could have been thrown out, or disposed of. Because why would you keep evidence from a case 20 years ago after a guilty plea? So, these sort of things, these problems, the legislature could have had in mind when they decided this. So, it's not obvious that these sort of claims were intended to be subject to the prejudice part of the positive prejudice test. Now, the state's argument is not confined merely that somehow this is a categorical bar. Because we're talking here about a claim of ineffective systems counsel arising from pre-trial proceedings under Missouri v. Frye. Now, even if they had substituted the word proceedings in for trial, in other words, if under Lake Tidwell, 122-1 was intended to be a codification of the Pittsburgher standard. Pittsburgher said, entire trial. So, even if we were allowed, like the defendant suggests, to substitute the word proceedings in for trial, then there would have to be error that so affected the entire proceedings, substituting that word in, that the resulting conviction or sentence violates due process. So, here there is a one part of the entire proceedings they're complaining about, which is, at one point, the alleged failure to communicate a guilty plea offer. Ms. Brooks? Yes. Can you go back? Maybe you've done this, maybe you haven't. I was reading something and you may have already addressed it, so I apologize. Can you reconcile Guerrero with your argument? Well, essentially, Guerrero was decided exclusively on the cause problem. And they did not reach the prejudice problem.  In my research, I could not find the actual decision. I don't believe the defense is psychical, either. Where, after a guilty plea, the court has actually found, not the trial, of course, but in a reported case, where the prejudice problem has been applied after a guilty plea. And, especially, I have not found a case in light of, like, Missouri v. Fry, where that sort of claim has been allowed to be pursued in a successive collateral attack. Because, as I was trying to say, that the claim of Sixth Amendment right to counsel, under Lafler v. Cooper, extends to the pretrial process, as well. So, here we have a violation, alleged violation, of Sixth Amendment right to counsel as a protection, in the pretrial process alone. Whereas, the prejudice standard, even under Kitzenbarger, refers to the entire trial. So, substituting where proceedings end, then, if that were allowed, then we still have to show that the error was so pervasive in the entire proceedings, such that the resulting conviction or sentence violates due process. So, in other words, there has to be a showing that the conviction or sentence resulted from the error that was so pervasive that it affected the entire, under their words, proceedings. Under the word used in Kitzenbarger, it was actually the entire trial. And so, it seems like this sort of, like, pretrial Sixth Amendment violation does not constitute a violation of the entire proceedings that would make a subsequent guilty plea made voluntarily. There's no defect itself with the plea and the sentence, other than the defendant's claim of a Sixth Amendment violation in a pretrial process. Well, you just mentioned the word voluntarily. How can a criminal defendant enter into a fully negotiated plea  You mean have note of an offer that has previously expired? Correct. Okay, which is no longer available at the time they're entering that plea. So, essentially, at that time, they are entering a voluntary plea, negotiated plea. But, essentially, with effective assistance of counsel at that moment, if they were denied effective assistance of counsel during a pretrial process, the state's position is that this still does not meet the standard of the entire proceeding if that were the word, that Kitzenbarger word refers to the word entire. So, it's not entirely here that the conviction or sentence resulted from a defect that pervaded the entire proceedings, such that that conviction or sentence would violate due process. In other words, it should not be assumed that strictly prejudice, which could be met under Missouri v. Fry, by showing a violation of the pretrial process alone, necessarily constitutes prejudice under this statute or under the Kitzenbarger statute if it's a codification of the Kitzenbarger standard. So, in other words, there is not a necessary connection between, oh, well, if he alleges strict and prevalent prejudice, then it constitutes prejudice sufficient to pursue it as a successful post-conviction petition. These are different forms of prejudice. They are not automatically the same. And so, therefore, just because he's alleged strict and prevalent prejudice doesn't mean that his petition, his motion for the final successive post-conviction petition, has alleged section 122-1F prejudice. And that's the state's point, is that the allegation of strict and prevalent prejudice is not an automatic showing of the statutory form of prejudice required to get me, the Federal Office of Justice, to PC. And I understand cases like Tremaine Jones. They say in 2004, after the effective date of 122-1F, had encouraged the defendant to file a successive post-conviction petition. And it's still not an explicit holding, though, that somehow this statute itself was passed by the legislature in a way that intentionally means that the legislature meant that these sort of claims should still be brought in successive PCs and that that's what the legislature had in mind when it passed this particular language. So the Schelter case also doesn't help the defendant because that dealt with re-characterization of the first petition. And it is important for that defendant to be admonished about the consequences of re-characterization, even if they plead guilty, and it probably could especially if they plead guilty, because Schelter doesn't really help the defendant in that way. And so there's really not really any precedent that the state can find that could decide the question either way. So it really does come down to what was the plain language of that statute, what does it mean, what is the legislative intent? And if the intent is not obvious, that an obvious intent would be defeated by rewriting the statute, then it should be up to the legislature to rewrite the statute if it chooses to do so, and this court should be bound by the literal meaning of the plain language. And for that reason, the dismissal should be affirmed on the ground raised by the athlete here, which is that the petition should never have been filed, the issue should not have been granted, because it failed to allege the necessary prejudice under Section 122-1L. Ms. Brooks, I know you put all your aids in the basket of statutory construction relative to the Post-Conviction Act and didn't address the substantive portion of the defendant's cause of prejudice analysis. So technically it may not be appropriate for you to even respond to the facts here, but I wanted to get the State's perspective on something relative to Fry and how the court is to analyze the prejudice aspect of it, and specifically that one element that calls for the defendant to establish a reasonable probability that the circuit court would have accepted the offer, the plea offer. So you're with me at that point? That's one of the elements? So in this case, you have what's alleged to be a 24-year plea offer made in December of 1998. Ultimately, there was a partially negotiated plea with a resultant sentence of 60 years, right? Presumably it's the same trial judge that was hearing the case in December of 1998. In November of 1999, it was Judge Prowl that sentenced the defendant to 60 years. Assuming it's the same trial judge and you've got a partially negotiated plea of guilty here, which results in a 60-year sentence, which is roughly two-and-a-half times the length of the initial plea offer, how is the defendant to establish that there was a reasonable probability that the trial judge would have accepted that 24-year plea offer when he ultimately sentenced him to 60 years? And how are we to review that issue? Right. Well, the defendant's position has to make a substantial showing of the strickling prejudice in order to pass second-stage review, and that would be reviewed de novo. And the defendant's well-treated allegations have to be accepted as true for purposes of second-stage review. So it seems to me, at least offhand, that that sort of question could be, most probably, the subject of a third-stage evidentiary hearing, which would be, what would have been for the court, we don't really know in this record, exactly what sort of aggravation could have been offered that would have prompted the trial court to reject the offer. I'm not sure exactly how could that be determined outside the context of the evidentiary hearing. What is a well-pled allegation? Are you saying that just simply the defendant would allege that the circuit court likely would have accepted the plea offer and then that satisfies the pleading burden at that point? And if not, then what facts could the defendant actually plea to establish this reasonable probability? I know Mr. Lenz indicated that in this case, under the fully-negotiated plea offer, the victim was not going to have to testify, and ultimately in the partially-negotiated plea, the victim did testify at the sentencing. So maybe that's the qualitative difference here. But to me, it seems like very murky territory where the defendant has to plead and prove that the circuit court was likely to accept the plea offer when you've got that disparity, 24 years versus 60 years. Great. I understand. And my understanding of the well-pleaded allegations is that if they are acceptably true, unless, for example, they are rebutted by the record is one way. A judge at the second stage could reject an allegation if it is permanently rebutted by the record. But I'm not sure in this record it would have permanently rebut the defendant's allegation. And so for that reason, I did not attempt to affirm on that basis or urge affirm on that basis because I believe the defendant's petition should be taken as true unless permanently rebutted by the record. And having been on the term in that it was affirmably rebutted by the record, even though he did receive a much longer sentence than was initially offered, if it had been offered, I'm not sure. But my point is I think this would be the subject of a third-stage evidentiary hearing, and the defendant could, in fact, get that far. Does that answer your question, Your Honor? Thank you. Thank you. Thank you. Any rebuttal? Thank you, Your Honor. Just to address Justice Harris's question, and the State agrees that the proceeding is satisfied, just to emphasize, this Court faced a similar question in Williams a few years ago, potential prior violations, and all those elements had to be met. And this Court, the proceedings were nearly identical, and this Court said that based on the proceedings established, at minimum, a substantial showing that all three of the five prejudice elements would be met. And it raises the kind of question that you're asking, Justice Harris, is the question of the fact that eight years on, they're hearing that these men totally agree with that. So just on the State's argument, the State is saying that a prior violation is not an error that so affects a proceeding that it requires relief. But the U.S. Supreme Court, in every case where a court is facing a prior violation, usually several years later, not many years later, the U.S. Supreme Court said that a prior violation is so serious that it requires relief, even if it's years after the initial proceedings. So I don't think this Court should be accepting such a downplay of seriousness of a prior violation. And I'll leave that other point to the judge to refine it. I'd like for you to address the argument regarding people versus Reed. It suggests that if we rule in your favor, we essentially would be taking a position inconsistent with Reed. What's your response to that? I don't think that's true at all, Your Honor. Reed involved an actual innocence claim where this Court held that the reason someone who pleaded guilty cannot claim actual innocence in a successive petition is that he's not attacking the volunteer. He was ignoring this guilty plea. He's saying that the guilty plea was false. And this Court found that that was not permitted under the statute. The prior violation is an allegation that the plea was not knowing the volunteer. So it's exactly that. It was intended for someone who was willing to plead guilty but was not fully informed of the State's offer. You know, the State's 24-year offer to make it within a month of the arrest The judge had Ryburn informed of that offer. He said he would have accepted that. I don't think that's a reasonable allegation. And it's also reasonable to assume in our criminal justice system that 80% to 90% of cases are decided by guilty plea. The judge would have accepted that offer within a few weeks of the arrest and ensured that this defendant would have been in prison for at least roughly 21 years. So, all of these things establish, I think, a minimum of reasonable probability of this man showing all of the elements of his criminal justice experience. And I'll leave your questions at that. Okay. Thanks to both of you.